[No. A052735. First Dist., Div. Three. Oct. 21, 1991.]

JOHN RICHARD PERETTO, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Jose R. Guerrero and Thomas P. Reilly, Deputy Attorneys General, for Defendant and Appellant.

Cliff Roberson and Barry D. Broad as Amici Curiae on behalf of Defendant and Appellant.

James T. Reilly for Plaintiff and Respondent.

## OPINION

**STRANKMAN, J.**\*—Vehicle Code section 13353.2 directs the Department of Motor Vehicles (the DMV) to suspend the driver's privilege of a person who was "driving or was in actual physical control of a motor vehicle when

---

\*Presiding Justice of the Court of Appeal, First District, Division One, sitting under assignment by the Chairperson of the Judicial Council.

the person had 0.08 percent or more, by weight, of alcohol in his or her blood."[1] Section 13558 entitles a driver to request what is in effect a presuspension administrative hearing; sections 13353.3 and 13353.6 govern the duration of any suspension and differentiate between a narrow group of holders of commercial driver's licenses arrested while driving noncommercial vehicles and other drivers.

The DMV suspended the driver's license of respondent John Richard Peretto after an administrative hearing pursuant to this statutory procedure. The trial court issued a writ of mandate directing the DMV to set aside the suspension, on the ground that the statutory scheme violated equal protection principles. We conclude that court's equal protection analysis was erroneous; we also conclude that the presuspension administrative hearing available to drivers comports with the requirements of due process. Therefore we reverse the order and direct the trial court to deny respondent's petition.

## INTRODUCTION

The Legislature enacted legislation in 1989 directing and enabling administrative suspension by the DMV of the driver's license of any person arrested for operating a vehicle with a blood-alcohol level in excess of .10 percent; in 1990 the legislation was amended to lower the blood-alcohol level to .08 percent. (See Stats. 1989, ch. 1460, § 7 et seq., No. 11 West's Cal. Legis. Service, p. 5554 et seq. [No. 7 Deering's Adv. Legis. Service, p. 6369 et seq.]; Stats. 1990, ch. 431, § 4, No. 9 West's Cal. Legis. Service, p. 1536 [No. 7 Deering's Adv. Legis. Service, pp. 1679-1680].) Similar laws providing for administrative license suspension or revocation, sometimes called "administrative per se" laws, have been enacted and are in effect in at least 23 states, and are reported to be an effective deterrent to driving while under the influence of alcohol or drugs. (See U.S. Dept. of Transportation, Nat. Highway Traffic Safety Admin., Questions Most Frequently Asked About Administrative License Revocation (1989).)[2] The United States Supreme Court has recognized in another context that the summary character of administrative license suspension fosters public safety and facilitates the prompt removal of drunk drivers from the highways. (*Mackey* v. *Montrym* (1979) 443 U.S. 1, 18 [61 L.Ed.2d 321, 334, 99 S.Ct. 2612] [administrative suspension of licenses of those who refuse to take breath-analysis test upon arrest].)

In this state, if chemical tests show that a person arrested for a drunk driving offense has the prohibited blood-alcohol level, the arresting officer

[1] Unless otherwise indicated, all further statutory references are to the Vehicle Code.

[2] We take judicial notice of this publication pursuant to Evidence Code section 452, subdivision (h).

or the DMV must serve that person with a notice of order of suspension, effective 45 days from date of service. That notice must include the reason and statutory grounds for the suspension, the right to request an administrative hearing, and the date when a request must be made to receive a determination prior to the effective date of the suspension, among other information. (§§ 13353.2, subds. (b), (c), 13353.3, subd. (a), 23158.5, subd. (a).) If no hearing is requested, the suspension becomes effective upon the date specified in the notice, after the DMV determines the facts on the basis of the officer's report. (§§ 13353.2, subds. (a), (d), 13353.3, subd. (a), 13557.)

A person whose license is to be suspended pursuant to section 13353.2 may request either an informal or formal hearing. (§§ 13558, subd. (a), 14100 et seq.) Upon a timely request, the administrative hearing must be held before the effective date of the order of suspension. (§ 13558, subd. (d).) Whether the hearing is informal or formal, the issues to be decided are whether the officer had reasonable cause to believe the person had been driving the vehicle in violation of section 23152 or 23153, the person was placed under arrest, and the person was driving or in actual control of a motor vehicle when that person had 0.08 percent or more, by weight, of alcohol in his or her blood. (§ 13558, subd. (c)(2).) The department's determination is subject to a petition for judicial review. (§ 13559.)

The general rules governing the period of suspension are set forth in section 13353.3. For a driver who has not been convicted of certain enumerated alcohol-related offenses, and who has not been administratively determined to have refused chemical testing or to have been driving with an excessive concentration of alcohol pursuant to section 13353.2, all within seven years of the instant offense, the suspension period is four months. (§ 13353.3, subd. (b)(1).)[3]

Section 13353.6 creates a narrow exception to that general rule. For the holder of a commercial driver's license (commercial licensee), who was operating a *noncommercial vehicle* at the time of the offense, and who has *never* been convicted of the enumerated driving offenses or had his or her license suspended or revoked administratively for an offense which occurred on a separate occasion, the suspension period is one month.[4] Thereafter, that

---

[3]A person who has had one or more separate specified convictions or adverse administrative determinations within seven years will have his or her license suspended for one year. (§ 13353.3, subd. (b)(2).)

[4]A "commercial driver's license" means a license issued in accordance with federal regulations authorizing the license holder to operate a class or type of commercial motor vehicle. (§ 15210, subd. (a).) A "commercial motor vehicle" means a vehicle which requires a class A, B, or C license with endorsement. (§ 15210, subd. (b)(1).)

commercial licensee is entitled to a restricted commercial license authorizing the operation of a motor vehicle only to and from, and in the course and scope of the person's employment, for five months. (§ 13353.6, subds. (a)(1), (2).) Because section 13353.6 applies only to commercial licensees who were not operating a commercial vehicle at the time of the offense, a commercial licensee who was operating such a vehicle when arrested and who otherwise qualifies is subject to the four-month suspension of section 13353.3, subdivision (b)(1).

## Factual and Procedural History

Peretto was arrested for driving under the influence of alcohol in violation of section 23152. Peretto does not hold a commercial driver's license and was not driving a commercial motor vehicle. An intoxilyzer-alcohol analyzer test was administered which showed that Peretto had a blood-alcohol content of .14 percent. After he was issued a notice of suspension, Peretto requested and was granted an administrative hearing before the DMV. At the conclusion of the hearing, his license was suspended.[5]

Peretto sought a temporary restraining order and injunctive relief in the superior court. His complaint alleged that the administrative license suspension (1) violated his constitutional due process rights in that section 13558, subdivision (c)(1), precluded timely consideration of evidence bearing upon his guilt or innocence, and created a presumption of guilt; and (2) violated the equal protection clauses of the federal and state Constitutions and the prohibitions against special legislation set forth in the state Constitution, in that section 13353.6 grants certain commercial licensees preferential treatment over other licensees determined to have committed the identical offense. Peretto argued that the administrative per se scheme was invalid as to him and that the suspension of his license should be enjoined pending the adjudication of the criminal charges against him.[6]

The court rejected Peretto's due process arguments, but concluded that section 13353.6 violates equal protection principles. The court reasoned: "The record reflects no reasonable legislative purpose for preserving to some intoxicated drivers the option to procure a restricted license, depending on whether or not they hold commercial driver's licenses. The court cannot reasonably infer that the distinction in some manner relates to, or is justified due to commerce since this presumption would ignore the extensive

---

[5]Concurrently with the administrative proceedings, a criminal prosecution against Peretto was commenced.

[6]After the DMV pointed out in its answer that the exclusive means for review of its order was a petition for writ of mandate (§ 13559), the trial court determined to treat Peretto's complaint as such a petition.

involvement in commerce of drivers of vehicles which do not meet the definitions found in Vehicle Code Sections 15210(a) and (b). Further, the restricted driving privilege sought to be preserved under Vehicle Code Section 13353.6 is not confined to the operation of vehicles which require a commercial license, or vehicles which, of necessity, are involved in commerce. . . . The restricted commercial licensee could legally drive his personal or other noncommercial vehicle solely in commuting to and from his employment, or in conjunction with the course and scope of his employment. No showing that the driver's employment requires the driver to operate a commercial vehicle is required to retain the commercial license. A similar benefit is not provided by statute to those holders of noncommercial licenses who must, of necessity, utilize their personal or other noncommercial vehicle in commuting to and from their employment or driving in the course and scope of their employment."

The trial court also concluded that section 13353.6 was not severable from the remaining portions of the administrative per se scheme, and directed the DMV to set aside its order suspending Peretto's license and to reinstate that license.

EQUAL PROTECTION

a. *The Standard of Review*

In analyzing the constitutionality of laws challenged under the equal protection clauses of the United States and California Constitutions, the standard of judicial review depends upon the interest affected and the classification involved. Where legislation does not impinge upon either a fundamental right or involve a suspect classification requiring strict scrutiny, that legislation is invested with a presumption of constitutionality and any distinctions it draws must merely " 'bear some rational relationship to a conceivable legitimate state purpose.' " (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10]; *In re Arthur W.* (1985) 171 Cal.App.3d 179, 184-185 [217 Cal.Rptr. 183].)

Respondent concedes that no suspect classification is involved here, and the right to operate a motor vehicle, which is not protected by any specific constitutional guarantee, is not fundamental for purposes of equal protection analysis. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 83 [177 Cal.Rptr. 566, 634 P.2d 917]; *In re Arthur W., supra,* 171 Cal.App.3d at pp. 186-187; *Alderette* v. *Department of Motor Vehicles* (1982) 135 Cal.App.3d 174, 178 [185 Cal.Rptr. 172].) Accordingly, the legislative classification under review is presumed constitutional, and we must limit our analysis to a consideration of whether it is rationally related to a proper

legislative goal. (See *In re Arthur W., supra*, 171 Cal.App.3d at pp. 186-187; *Alderette* v. *Department of Motor Vehicles, supra*, 135 Cal.App.3d at p. 178; *Yeoman* v. *Department of Motor Vehicles* (1969) 273 Cal.App.2d 71 [78 Cal.Rptr. 251].)[7] We emphasize that while this or any court may perceive that the purpose of legislation regulating licensing might be accomplished more fairly or efficiently by an objector's suggested modification, the Legislature's drafting of such legislation is generally a matter which courts may not second-guess. (*Hernandez* v. *Department of Motor Vehicles, supra*, 30 Cal.3d at p. 80, fn. 10; *Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900].)

California decisions involving legislation impinging upon the privilege to operate a motor vehicle illustrate the deference accorded to legislative judgment which results from application of this "rational relationship" test. In *Alderette* v. *Department of Motor Vehicles, supra*, 135 Cal.App.3d 174, the plaintiffs, holders of farm labor vehicle driver certificates, were convicted of drunk driving while operating their private vehicles off-duty, and their certificates were revoked. Plaintiffs challenged the Vehicle Code section requiring revocation, arguing that the same harsh sanction was not imposed on other bus or mass transit drivers convicted of the same offense. The court rejected the challenge, stating that "[w]hile the Legislature might have wisely imposed similar sanctions to drivers of mass transit buses or common carriers," its failure to do so did not invalidate the statute because "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind . . . ." (*Alderette, supra*, at p. 179, internal quotation marks omitted.) The court also held that the Legislature could rationally have perceived a relationship between one's on-duty driving and an off-duty transgression. (*Ibid.*)

*In re Arthur W., supra*, 171 Cal.App.3d 179, involves a challenge to the Vehicle Code section providing for revocation of a minor's license until he or she is 18 or for one year, upon a finding by the juvenile court of driving under the influence. The minor argued that the statute violated equal protection principles because minor offenders were disparately treated solely because of their age, but the court concluded that motor vehicle traffic fatality and accident statistics justified the disparate treatment. (*Id.*, at p. 188.) The minor also argued the legislation was particularly unfair as applied to minors whose offenses were committed shortly before their 18th birthday. The court disagreed, stating: "To pass constitutional muster under

---

[7]The parties agree that the same rational basis test applies to the claim that the administrative suspension law violates the California Constitution's prohibition against special legislation. (*County of L. A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 389 [196 P.2d 773]; see also *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596, fn. 11 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

the rational relationship test, a law ' " 'need not be in every respect logically consistent with its aims . . . . It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.' " ' [Citation.]" (*Id.*, at p. 189.)

*Beamon v. Dept. of Motor Vehicles* (1960) 180 Cal.App.2d 200 [4 Cal.Rptr. 396], is particularly apposite. At issue in *Beamon* was legislation authorizing the administrative revocation of a driver's license upon a determination that the driver was a negligent operator. As a guide in the negligent operator determination, the legislation established a point-count system to evaluate a driver's traffic record. The legislation also specified that the department was to give " '. . . due consideration to the more frequent use of motor vehicles by chauffeurs.' " (*Id.*, at pp. 206-207.) The apparent result of the latter provision was that a chauffeur could commit more traffic violations before being classified as a negligent operator than a nonchauffeur.

The license of a carpenter, who claimed he drove several thousands of business-related miles each year, was revoked pursuant to the foregoing legislation. He argued he was denied equal protection because of the preferential treatment apparently accorded to chauffeurs. He perceived no reasonable distinction between a chauffeur and a licensee such as himself, who was necessarily required by his occupation to drive far more than individuals who drive only for pleasure. (*Beamon v. Dept. of Motor Vehicles, supra*, 180 Cal.App.2d at pp. 207-208.) The appellate court disagreed. It cited case law describing chauffeurs as "in a class by themselves" and concluded that the legislation had "a rational foundation." (*Id.*, at p. 209.) The unstated but necessary explanation for the court's conclusion was that the Legislature could rationally permit a chauffeur to continue to drive under circumstances which might result in the suspension of another driver's license, either because it believed chauffeurs to be more cautious than other drivers or because it believed chauffeurs had fewer accidents per miles driven than other drivers.

b. *Analysis*

The legislative classification at issue in this case is between certain commercial licensees and all other drivers. The DMV correctly points out that, in general, commercial licensees are subjected to more stringent oversight and regulation than other California drivers. (See § 15200.) For instance, no person may operate a commercial motor vehicle without a valid commercial driver's license of the appropriate class. (§ 15250, subd. (a).) Applicants for a commercial license must pass a written and driving test for operation of a commercial vehicle which complies with certain minimum

federal standards, and must satisfy other requirements. (§ 15250, subd. (b).) Applicants for employment as a driver of a commercial motor vehicle must provide employers with information about their employment during the preceding 10 years as a commercial driver. (§ 15230.)

Furthermore, drivers of commercial motor vehicles licensed in this state who are convicted of any offense involving the safe operation of a motor vehicle in any other state must notify both the DMV and their employers. (§§ 15220, 15222.) Any such driver who has his or her license suspended, revoked, or canceled by any state for any period, or who is disqualified from driving a commercial motor vehicle for any period, is required to notify his or her employer before the end of the business day following the action. (§ 15224.)

Holders of commercial licenses who are convicted of drunk driving offenses face prolonged or indefinite license suspension. A driver of a commercial vehicle convicted of a first violation of driving a commercial vehicle under the influence of alcohol or a controlled substance may not operate a commercial motor vehicle for a one-year period. (§ 15300, subd. (a).) A second such conviction means revocation of the license to operate a commercial motor vehicle for life. (§ 15302, subd. (a).) The sanctions for holders of noncommercial driver's licenses convicted of alcohol-related offenses are less severe. (See §§ 13353, subd. (a)(1), 23165.)

The statutory scheme challenged by Peretto distinguishes between some commercial licensees and other drivers by creating a narrow exception to the general rules governing the period of license suspension. Drivers who drive with a blood-alcohol level in excess of the legal limit, and who have not had either an alcohol-related conviction or an administrative license suspension for seven years, are subject to a four-month suspension. Only one group is treated differently. The commercial licensee who has never had a previous drunk driving conviction or administrative license suspension, and who was driving a noncommercial vehicle with the forbidden blood-alcohol level, faces a one-month suspension, followed by five months during which his or her license is restored but severely restricted to work-related driving.

Our only task is to determine whether there may be some rational basis for this difference. First, the Legislature may reasonably have concluded that the holders of commercial licenses as a group depend more upon those licenses for their employment and economic survival than do the holders of noncommercial licenses, even though individuals in many occupations must drive noncommercial vehicles as part of their employment. The Legislature may also have determined that commercial licensees as a group have fewer

alcohol-related accidents per miles traveled than do noncommercial licensees.[8] The Legislature may also have believed that the narrow subgroup of commercial licensees who are the subject of section 13353.6 are less likely than others to drive with the prohibited blood-alcohol level a second time, either in a commercial or noncommercial vehicle, not only because of their need to retain their licenses and the serious sanctions which they face if they commit another offense, but also because of their previous driving records. The Legislature may rationally have concluded that for these drivers, a one-month suspension coupled with five months under a restricted license is an adequate method to accomplish the statutory purpose. That we might disagree with this rationale or consider it not entirely logical or consistent with the legislative aim in every respect does not entitle us to conclude that the legislation is unconstitutional. (See *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 79.)

In summary, we conclude section 13353.6 is rationally related to a legitimate legislative purpose and does not violate the equal protection clauses of the state or federal Constitutions or the prohibition against special legislation set forth in the California Constitution.

## DUE PROCESS

■ We have already noted that although the trial court agreed with Peretto's equal protection argument, it rejected his due process attack on the administrative suspension procedure. Relying on the rule that a legally correct ruling will not be disturbed on appeal because given for the wrong reason, Peretto now urges that even if the trial court's equal protection analysis was not sound, its order should be affirmed because the statutory scheme does violate due process. (See also Code Civ. Proc., § 906.) ■ We agree, of course, that a state's suspension of a driver's license for statutorily defined cause must comport with constitutional due process requirements, to protect against an erroneous deprivation of the driver's property interest in that license. (*Mackey* v. *Montrym, supra,* 443 U.S. at p. 10 and fn. 7 [61 L.Ed.2d at p. 329]; *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586].) ■ However, we find no merit in Peretto's due process arguments.

In *Mackey* v. *Montrym, supra,* 443 U.S. 1, the Supreme Court considered a due process challenge to a Massachusetts statute mandating administrative

[8]A 1988 study published by the U.S. Department of Transportation on National Highway Traffic Safety Administration reports that fatal traffic accidents in the United States for 1982 through 1988 show that the percentage of intoxicated drivers of medium and heavy trucks involved in fatal accidents was substantially less than the percentage of intoxicated drivers of passenger cars involved in fatal accidents. Pursuant to Evidence Code section 452, subdivision (h), we take judicial notice of that report, entitled Fatal Accident Reporting System 1988.

suspension of a driver's license because of a driver's refusal to take a breath-analysis test upon arrest for driving under the influence of intoxicating liquor. The statute provided for an immediate hearing upon request after surrender of the license, and the question in the case was whether due process required a presuspension hearing. (*Id.*, at p. 10 [61 L.Ed.2d at p. 329].)

The court reiterated that the determination of what process is due requires identification and balancing of three distinct factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the financial and administrative burdens which would be entailed by additional safeguards. (443 U.S. at p. 10 [61 L.Ed.2d at p. 329], citing *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893].)

As it weighed these factors, the *Mackey* court focused on the public safety purpose of the administrative suspension statute and noted that states have traditionally been granted great leeway in adopting summary procedures to protect public health and safety. The court reasoned that the state's paramount interest in public safety was substantially served by the summary suspension procedure for several reasons, including its deterrent effect on drunk driving and the prompt removal from the road of those who drink and drive. (*Mackey, supra*, 443 U.S. at pp. 17-18 [61 L.Ed.2d at pp. 333-335].) Emphasizing that a hearing to resolve any questions of fact was available immediately upon suspension, the court concluded that the state's compelling interest in highway safety justified the state in making a summary suspension effective pending the outcome of that hearing. (*Mackey* v. *Montrym, supra*, 443 U.S. at pp. 18-19 [61 L.Ed.2d at pp. 334-335].)

Because the procedure analyzed in *Mackey* passed constitutional muster, California's procedure is necessarily also valid; under California law, an administrative hearing is available to a driver upon request *before* the effective date of an administrative license suspension. (§ 13558, subd. (e).) We note that an administrative suspension procedure in Delaware with a similar provision was upheld against a due process challenge in *Cook* v. *Oberly* (Del.Ch. 1983) 459 A.2d 535, in which the court emphasized that because the statute provided a right to a presuspension hearing, it offered greater protection than was constitutionally required. (*Id.*, at p. 539.)

Notwithstanding the foregoing authority, Peretto suggests that the California procedure violates due process because it does not provide for hardship relief from license suspension. The argument ignores the *Mackey* court's explanation of the significance of such relief. Due process does not require a

hardship exemption from administrative license suspension. Instead, when there is a delay in providing a postsuspension hearing, the fact that a hardship exemption exists but is unavailable until after suspension may have some bearing in the due process equation. However, when a driver is entitled to an immediate hearing, the presence or absence of a hardship provision is simply not significant in a due process analysis. (*Mackey* v. *Montrym, supra,* 443 U.S. at pp. 11-12 [61 L.Ed.2d at pp. 330-331].)

Peretto also attacks the adequacy of the administrative hearing itself, which he characterizes as no more than a mechanical exercise. He argues that the hearing does not comport with due process because it does not provide drivers with "the opportunity to present evidence of nonculpability." The argument is without merit.

The hearing required by the due process clause must be " 'meaningful' " and " 'appropriate to the nature of the case.' " (*Bell* v. *Burson, supra,* 402 U.S. at pp. 541-542 [29 L.Ed.2d at pp. 95-96].) Thus in a license suspension hearing, consideration of an element essential to the decision whether the license shall be suspended may not be completely excluded. (See *ibid.*) Under California's procedure, whether a driver requests an informal or a formal hearing, the issues to be decided are whether the officer had reasonable cause to believe the person had been driving the vehicle in violation of section 23152 or 23153, the person was placed under arrest, and the person was driving or in actual control of a motor vehicle when that person had 0.08 percent or more, by weight, of alcohol in his or her blood. (§ 13558, subd. (c)(2).) Clearly, the hearing provides the licensee with the opportunity to contest the elements essential to the suspension decision.

*Bell* v. *Burson, supra,* 402 U.S. 535, upon which Peretto relies, is inapposite. The question in that case was whether Georgia could suspend the license of an uninsured motorist involved in an accident who could not post the security required by statute, without a prerevocation hearing on the question of culpability for the accident. Although Georgia did provide a prerevocation hearing, the proceeding was limited to whether the driver was involved in the accident or came within any statutory exemptions. (*Id.,* at pp. 535-536 [29 L.Ed.2d at pp. 92-93].) The Supreme Court held that because the statutory scheme made liability an important factor in the ultimate determination to deprive an individual of his or her license, the state could not constitutionally completely exclude consideration of that factor at the prior hearing.[9] (*Id.,* at pp. 541-543 [29 L.Ed.2d at pp. 92-93].) In contrast,

---

[9]The court also concluded that a full adjudication of the question of liability was not required; instead, procedural due process would be satisfied by an inquiry limited to determining whether there was a reasonable possibility of a judgment being rendered against the

under California law the issues to be decided at the hearing are precisely those upon which the decision to suspend the license depends.

It is true that if a driver whose license has been administratively suspended is later acquitted of the related criminal charges, the DMV must reinstate the license. (§ 13353.2, subd. (e).) However, Peretto cites no authority which supports the proposition that the inclusion of that benefit in the statutory procedure compels a determination in the administrative proceeding of whether the driver could ultimately be convicted of any criminal charges. That administrative hearing requires a determination based on a preponderance of the evidence standard. An acquittal of a criminal charge might represent only a conclusion that the proof was not sufficient to prove guilt beyond a reasonable doubt, not an adjudication that the driver did not actually drive with the unlawful blood-alcohol level. (See *One Lot Emerald Cut Stones* v. *United States* (1972) 409 U.S. 232, 234-235 [34 L.Ed.2d 438, 441-442, 93 S.Ct. 489]; *Cook* v. *Oberly, supra,* 459 A.2d at p. 540.) ▮ The state does not violate due process by imposing both criminal and civil sanctions for the same act or omission. (*United States* v. *Ward* (1980) 448 U.S. 242, 250 [65 L.Ed.2d 742, 750, 100 S.Ct. 2636].) Peretto's due process arguments are not persuasive.

### DISPOSITION

The order is reversed, and the matter is remanded to the trial court with directions to deny Peretto's petition and reinstate the Department of Motor Vehicles' order of suspension. The department shall recover its costs on appeal.

Merrill, Acting P. J., and Chin, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 23, 1992.

---

driver as a result of the accident. (*Bell* v. *Burson, supra,* 402 U.S. at p. 540 [29 L.Ed.2d at p. 95].)