[No. C063287. Third Dist. Jan. 25, 2011.]

JOSEPH SCOTT ZIEHLKE, Plaintiff and Appellant, v.
GEORGE VALVERDE, as Director, etc., Defendant and Respondent.

**COUNSEL**

Law Offices of Kenneth M. Foley and Kenneth M. Foley for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Vincent J. Scally, Jr., Scott H. Wyckoff, Barbara A. Morris and Kevin Hosn, Deputy Attorneys General, for Defendant and Respondent.

**O**PINION

**SCOTLAND, J.**[*]—Lose your sobriety, lose your driver's license, lose your job. That is one of the serious consequences for commercial motor vehicle operators who drive under the influence of alcohol.

Vehicle Code section 15300 prohibits a person from operating a commercial motor vehicle for a period of one year if the person is "convicted" of driving any vehicle while having 0.08 percent or more of alcohol in his or her blood (Veh. Code, § 23152, subd. (b)), or driving a commercial vehicle while having a blood-alcohol content of 0.04 percent or more (Veh. Code, § 23152, subd. (d)), or committing other driving offenses listed in the statute (Veh. Code, § 15300, subd. (a)(1)–(10); further section references are to the Vehicle Code unless otherwise specified). A "conviction" includes "a determination" by "an authorized administrative tribunal" that "a person has violated or failed to comply with the law . . . ." (§ 15210, subd. (d).)

When Joseph Scott Ziehlke was arrested for driving his pickup truck while having a blood-alcohol content of 0.16 percent, twice the legal limit, the arresting officer confiscated Ziehlke's Class B commercial driver's license. The officer gave Ziehlke a Department of Motor Vehicles (DMV) document entitled "ADMINISTRATIVE PER SE SUSPENSION/REVOCATION ORDER AND TEMPORARY DRIVER LICENSE," which notified Ziehlke that his "privilege to operate a motor vehicle will be suspended or revoked effective 30 days from the [date of arrest]" and that he had 10 days to request a DMV administrative hearing to show that suspension or revocation of his driver's license was not justified. The document further notified Ziehlke that he would be disqualified from operating a commercial vehicle if the DMV found that he "held a commercial driver license [while] driving any vehicle [not just a commercial vehicle] when [he] had a 0.08% BAC [blood-alcohol content]."

During the administrative hearing requested by him, Ziehlke admitted drinking "a few beers" and "some Peppermint Schnapps" prior to the driving that led to his arrest. Based upon evidence that Ziehlke was found in his vehicle stopped in a roadway, evidence of his symptoms of intoxication, including bloodshot and watery eyes, odor of alcohol, unsteady gait, loss of balance, and slurred speech, and evidence that his blood-alcohol content was 0.16 percent, the DMV hearing officer found (1) the arresting officer had reasonable cause to believe that Ziehlke was driving a motor vehicle while under the influence of alcohol; (2) Ziehlke was lawfully arrested for driving

---

[*]Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

in violation of section 23152; and (3) Ziehlke was driving a motor vehicle when he had a blood-alcohol content of 0.08 percent or more. (See §§ 13557, subd. (b)(2), 13558, subd. (c)(2).)

Accordingly, the DMV "re-imposed" the suspension of Ziehlke's driving privilege and disqualified him from operating a commercial vehicle for a period of one year. (§ 15300, subd. (a)(1).)

The superior court denied Ziehlke's petition for writ of mandate challenging the suspension of his commercial driver's license.

On appeal, Ziehlke claims the DMV administrative finding that he drove a motor vehicle while having a blood-alcohol content over 0.08 percent "does not satisfy due process so as to be deemed a 'conviction' under" section 15300, subdivision (a)(1). According to Ziehlke, the "Admin Per Se hearing process fails due process in order to equate as a 'conviction' " because the hearing officer "is not required to be qualified for the job" and the burden of proof "is only by a 'preponderance of the evidence.' " In his view, "the rationalization of the language 'administrative tribunal' [(§ 15210, subd. (d))] has to be to tribunals such as the military which comply with basic notions of due process . . . ." The contention fails.

As we will explain, because the DMV administrative hearing is not for the purpose of imposing criminal sanctions, "relaxed" standards of due process apply. (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155, 159 [8 Cal.Rptr.3d 48, 81 P.3d 975].) Proof beyond a reasonable doubt is not required, and we presume that the person conducting the hearing has the education, experience, knowledge, and abilities required by State Personnel Board specifications to be a DMV hearing officer.

Accordingly, we affirm the judgment against Ziehlke.

## DISCUSSION

## I

Section 13353.2 directs the DMV to suspend the driving privilege of a person who "was driving a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood" in violation of section 23152, subdivision (b). (§ 13353.2, subd. (a)(1).)[1]

---

[1] The person's driving privilege must be suspended if he or she "was driving a vehicle that requires a commercial driver's license when the person had 0.04 percent or more, by weight,

When a driver is arrested for such a violation and "chemical test results . . . show that the person has 0.08 percent or more, by weight, of alcohol in the person's blood," section 13382 requires the arresting officer, "acting on behalf of the [DMV]," to "personally [serve] on the arrested person" a "notice of order of suspension or revocation of the person's privilege to operate a motor vehicle personally on the arrested person" (§ 13382, subd. (a)); "take possession of any driver's license issued by this state which is held by the person" (§ 13382, subd. (b)); "issue, on behalf of the [DMV], a temporary driver's license . . . valid for 30 days from the date of arrest" (*ibid.*); and send to the DMV "a copy of the completed notice of order of suspension form," along with "any driver's license taken into possession [by the arresting officer]" (§ 13382, subd. (c)) and "a sworn report of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's grounds for belief that the person violated [specified sections, including section 23152], a report of the results of any chemical tests that were conducted on the person or the circumstances constituting [the person's] refusal to submit to or complete the chemical testing," a "copy of any notice to appear under which the person was released from custody," and "if immediately available, a copy of the complaint filed with the court" (§ 13380, subd. (a)).

The driver may request and obtain a DMV administrative hearing on the matter. (§§ 13558, subd. (a), 14100, subd. (a).) "If the person wishes to have a hearing before the effective date of the order of suspension or revocation, the request for a hearing shall be made within 10 days of the [person's] receipt of the notice of the order of suspension or revocation." (§ 13558, subd. (b).) The driver has the right to review the DMV records prior to the hearing. (§ 14104.) The hearing "shall be conducted by the director [of the DMV] or by a hearing officer or hearing board appointed by [the director] from officers or employees of the [DMV]." (§ 14104.2, subd. (a).) At the request of the driver or of any party to the hearing, the DMV or the hearing officer shall—before the hearing has commenced—issue subpoenas for atten-dance or production of documents at the hearing. (§ 14104.5, subd. (a).) The hearing officer "shall consider [the DMV's] official records and may receive sworn testimony." (§ 14104.7.) "Upon the conclusion of a hearing, the hearing officer or hearing board shall make findings and render a decision on behalf of the [DMV] and shall notify the [driver] involved. Notice of the decision shall include a statement of the person's right to a review. The decision shall take effect as stated in the notice, but not less than four nor more than 15 days after the notice is mailed." (§ 14105, subd. (a).)[2]

---

of alcohol in his or her blood." (§ 13353.2, subd. (a)(3); see *Rehman v. Department of Motor Vehicles* (2009) 178 Cal.App.4th 581, 584, 588 [100 Cal.Rptr.3d 510].)

[2] The driver may request a review of the hearing officer's decision. (§ 14105.5, subd. (a).) "The review shall include an examination of the hearing report, documentary evidence, and

■ This DMV hearing procedure "is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without additional evidence of impairment. [Citation.] The express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. [Citations.]" (*MacDonald v. Gutierrez, supra,* 32 Cal.4th at p. 155.)

## II

In accordance with the administrative per se procedure outlined above, Ziehlke's Class B commercial driver's license was suspended, and the DMV disqualified him from operating a commercial vehicle for a period of one year (§ 15300, subd. (a)(1)), because a DMV hearing officer found Ziehlke violated section 23152, subdivision (b) by driving his pickup truck while he had a blood-alcohol content of 0.16 percent.

Section 15300 states in part: "(a) A driver shall not operate a commercial motor vehicle for a period of one year if the driver is *convicted* of a first violation of [various Vehicle Code sections, including section 23152, subdivision (b)]." (Italics added.)

Ziehlke begrudgingly acknowledges that a "[c]onviction" within the meaning of section 15300 includes "a determination" by "an authorized administrative tribunal" that "a person has violated or failed to comply with the law . . . ." (§ 15210, subd. (d).)

Nevertheless, Ziehlke argues that the DMV "is not an 'authorized administrative tribunal' for the purpose of making determinations of guilt or innocense [*sic*] sufficient to equate conduct to being a 'conviction' " because the hearing officer "is not required to be qualified for the job" and the burden of proof "is only by a 'preponderance of the evidence.' " He believes that, because the "judicial like decisions [regarding whether a person has driven with a prohibited blood-alcohol content] have catastrophic effects on the lives

findings. The hearing officer or hearing board conducting the original hearing may not participate in the review process." (§ 14105.5, subd. (b).) "Following the review, a written notice of the [DMV's] decision shall be mailed to the person involved." (§ 14105.5, subd. (c).)

of the commercial drivers," we must construe the words "authorized administrative tribunal" in section 15300 to apply only "to tribunals such as the military which comply with basic notions of due process and [c]onstitutional guarantees."

His argument fails to acknowledge that the DMV administrative per se process for suspension of the privilege to drive a motor vehicle is not akin to a criminal proceeding, and that not all of the principles of due process of law that apply to criminal proceedings are required for the DMV administrative per se process.

■ The hearing in accordance with the DMV administrative per se law is a hearing of an administrative tribunal authorized by statute to decide whether facts exist to suspend a person's driver's license. (*MacDonald v. Gutierrez, supra*, 32 Cal.4th at pp. 155–159.) It is not akin to a criminal proceeding because it is not for the purpose of imposing criminal sanctions, but to decide whether a person's privilege to drive should be suspended because the person endangered the public by driving with a prohibited blood-alcohol content. (*Id.* at p. 155; *Beamon v. Department of Motor Vehicles* (1960) 180 Cal.App.2d 200, 210 [4 Cal.Rptr. 396] ["suspension or revocation of a license is not penal; its purpose is to make the streets and highways safe by protecting the public from incompetence, lack of care, and wilful disregard of the rights of others by drivers"].)

The administrative per se proceeding was created by statute to protect the public because the Legislature "deemed [the proceeding] necessary due to the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited blood-alcohol concentration. During this interim period, arrestees who would eventually be convicted of an intoxication-related driving offense were permitted to continue driving and, possibly, endangering the public. Moreover, without administrative per se laws, persons with extremely high blood-alcohol concentration levels at the time of arrest could escape license suspension or revocation by plea bargaining to lesser crimes or entering pretrial diversion. Thus, by providing for an administrative license suspension prior to the criminal proceeding, the law affords the public added protection." (*MacDonald v. Gutierrez, supra*, 32 Cal.4th at p. 155.)

■ Determining what process is due "requires identification and balancing of three distinct factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the financial and administrative burdens which would

be entailed by additional safeguards." (*Peretto v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 460 [1 Cal.Rptr.2d 392] (hereafter *Peretto*); see also *Mackey v. Montrym* (1979) 443 U.S. 1, 10 [61 L.Ed.2d 321, 329–330, 99 S.Ct. 2612] (hereafter *Mackey*); *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893].)

Courts held long ago that the balancing of the aforesaid factors favors relaxed standards for administrative proceedings to decide whether facts exist to suspend the driver's license of a person arrested for driving with a prohibited blood-alcohol content. (*Mackey, supra,* 443 U.S. at pp. 11–19 [61 L.Ed.2d at pp. 330–335]; *MacDonald v. Gutierrez, supra,* 32 Cal.4th at p. 159; *Peretto, supra,* 235 Cal.App.3d at pp. 459–460.)

■ Consistent with this well-established authority that Ziehlke does not even acknowledge, let alone address, we conclude the right to due process of law does not require, as he claims, a standard of proof beyond a reasonable doubt in administrative per se proceedings regarding suspension of the driver's license of a person arrested for driving with a prohibited blood-alcohol content. (*Peretto, supra,* 235 Cal.App.3d at p. 462 ["administrative hearing requires a determination based on a preponderance of the evidence standard. An acquittal of a criminal charge might represent only a conclusion that the proof was not sufficient to prove guilt beyond a reasonable doubt, not an adjudication that the driver did not actually drive with the unlawful blood-alcohol level"].)

Accordingly, the DMV may, based on a preponderance of the evidence, prohibit, on that ground, the holder of a commercial vehicle license from operating such a vehicle for a period of one year. (§ 15300.)

We also reject Ziehlke's claim that the administrative per se proceeding violates due process because, in his view, the person who is appointed by the director of the DMV to be a hearing officer "is not required to be qualified for the job." In rhetoric demeaning to those whom he uses as examples, he argues that, because the statute states the hearing "shall be conducted by the director [of the DMV] or by a hearing officer or hearing board appointed by [the director] from officers or employees of the [DMV]" (§ 14104.2, subd. (a)), the hearing officers could be janitors, security guards, or mailroom clerks with no legal training. This claim overlooks that the State Personnel Board has promulgated minimum qualifications for a person to serve as a driver safety officer "conducting Administrative Per Se Hearings" (<http://www.dpa.ca.gov/textdocs/specs/s8/s8727.txt> [as of Jan. 25, 2011], attached as the appendix to this opinion). We take judicial notice of them. (Evid. Code, § 452, subds. (b), (c).) The qualifications include, among other things, that DMV hearing officers (1) have completed certain college courses

and have specified work experience, (2) have knowledge of rules of evidence "as they apply to the conduct of Administrative Per Se and other hearings," applicable case law, Vehicle Code provisions, and hearing procedures and practices, and (3) have the "[a]bility to: [i]nterpret and apply statutes and applicable case law, regulations, and policies relating to driver licenses and traffic safety; . . . rule on motions and objectives, weigh evidence, identify facts, resolve issues of credibility, identify appropriate law, apply law to facts, and make fair and impartial decisions which are based solely upon the merits of the case . . . ." (See appen., *post*, at p. 1536.) We presume that the director of the DMV appoints as hearing officers only those who meet these qualifications. (Evid. Code, § 664.)

■ For reasons stated above, the administrative per se statutory scheme does not violate due process of law, and the DMV finding that Ziehlke drove a motor vehicle while having a blood-alcohol content of 0.08 percent or more was a "conviction" within the meaning of section 15300 requiring the DMV to prohibit him from operating a commercial motor vehicle for a period of one year.

### III

In passing, and not under a separate heading as required by California Rules of Court, rule 8.204, Ziehlke raises a claim that he did not assert in the superior court. He cites statutes of four other states for the proposition that, a "view of the different definitions of 'conviction' throughout the United States makes it easy to see how [his] problems would not exist if he lived in other states." Therefore, he asserts, California's administrative per se process for suspending a driver's license "violates the right to equal protection under the laws" because the "interpretation now given to 'conviction' in the California Statute [*sic*] exceeds the interpretation of 'conviction' by a number of states."

Not only has Ziehlke forfeited the claim by failing to raise it in the superior court (see *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746]), it is forfeited by his failure to provide any meaningful analysis of the principles of equal protection of laws (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 [41 Cal.Rptr.3d 453]).

■ In any event, the claim fails on the merits. To prevail on an equal protection of law challenge, a person must show the state has adopted a classification that affects in an unequal manner two or more groups that are similarly situated for purposes of the law that is challenged. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) California's administrative procedures governing suspension or revocation of the privilege to drive in this state need not conform to such procedures

in other states. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516 [84 Cal.Rptr.2d 638].) Thus, Ziehlke is not similarly situated to persons licensed by other states to drive.

## DISPOSITION

The judgment is affirmed.

Robie, Acting P. J., and Mauro, J., concurred.

## APPENDIX

SPEC: DRIVER SAFETY OFFICER SERIES
CALIFORNIA STATE PERSONNEL BOARD

### SPECIFICATION

Schematic Code: VQ51
Class Code: 8727
Established: 9/18/80
Revised: 5/2/01
Title Changed: 2/2/93

## DRIVER SAFETY OFFICER

### DEFINITION

This specification describes a classification with four alternate salary ranges to be used in the Department of Motor Vehicles' Driver Safety Program. The classification is used for prelicensing and postlicensing control of the driving privilege. Incumbents review financial responsibility and driver records; conduct interviews, reexaminations, and hearings relative to the modification, granting, or withdrawal of the driving privilege in cases involving drivers with physical or mental problems, negligent vehicle operation, fraud, or noncompliance with the Administrative Per Se statute; and do other related work.

### ENTRY LEVEL

Entry into this classification is typically at the class level of Driver Safety Officer, Range A, or Driver Safety Officer, Range B. In Range A, the incumbent is being trained to conduct the various types of driver safety contacts; i.e., investigations, interviews, reexaminations, and hearings. There is substantial supervision required. Contacts consist of the most basic types of Driver Safety work including cases which are the least sensitive and complex and are not high profile. Possession of the criteria described in Alternate Range Criteria 133, Range A or B, permits entry at the appropriate level.

## FACTORS AFFECTING POSITION ALLOCATION

Complexity; level and variety of work assigned; independence of action; egree of responsibility; supervision received; and sensitivity of work assigned.

## TYPICAL TASKS

In a regional or headquarters assignment, Driver Safety Officer incumbents in this classification perform increasingly difficult work in the Driver Safety Program. In Ranges A and B, under close supervision, incumbents progress from the entry level of very basic hearings to less involved types of hearings, reexaminations, and interviews. These duties include, but are not limited to, conducting Commercial Driver, Financial Responsibility, Physical/Mental, Negligent Operator, and Fraud hearings. In Range C, under general direction, Driver Safety Officers should be fully experienced, conducting the full range of hearings. These duties include, but are not limited to, conducting Administrative Per Se Hearings, Commercial Driver, Financial Responsibility, Physical/Mental, Negligent Operator, and Fraud hearings. In Range D, under general direction, Driver Safety Officers should be fully experienced, conducting the full range of hearings including Seizure and Sale and Special Certificate; and capable of functioning in a lead capacity in the absence of the manager. Incumbents are able to conduct hearings of a sensitive and/or complex nature that require extensive, in-depth investigation or have high public or political visibility.

In Headquarters, incumbents review and recommend or order action on various complex and/or sensitive cases involving drivers' eligibility to hold licenses, and perform technical duties related to experience and training. Incumbents may prepare correspondence for the signature of the Chief and/or Deputy Director or Director. Incumbents in a Headquarters unit in a line program analysis setting may also conduct and document user testing of the Driver Safety Special Application Program, provide assistance in establishing guidelines and procedures for analyzing and troubleshooting problems reported by users relative to policy and procedure guidelines, and analyze and develop written policies and procedures for the Driver Safety Special Application Help Desk.

All incumbents are expected to understand the application of laws, administrative procedures, rules of evidence, and regulations relating to the types of hearings, interviews, and reexaminations conducted and to develop skills in report writing, interviewing, and interpersonal communication.

Incumbents in all ranges make public presentations related to the Driver Safety Program.

## MINIMUM QUALIFICATIONS

Possession of a valid driver license of the appropriate class issued by the Department of Motor Vehicles. (Applicants who do not possess a license will be admitted to the examination but must secure the license prior to appointment.)

and
Either I

Education: Equivalent to graduation from four years of college, preferably with a degree in criminal justice, prelaw, psychology, sociology, or a related field, or an equivalent degree approved by the Bureau for Private Postsecondary and Vocational Education under the provisions of California Education Code Division 10, Part 59, Chapter 3. (Students in their senior year of college will be admitted to the examination, but they must produce evidence of graduation before they can be considered eligible for appointment.)

Or II

Education: Successful completion of the equivalent of nine semester units of college, which must have included at least one course in English composition and two courses in psychology, sociology, or a related field. and

Experience: One year of experience in the Department of Motor Vehicles performing the duties of a Licensing/Registration Examiner or Senior Motor Vehicle Technician. (Additional college education may be substituted for the required general experience on the basis of one year of education for six months of general experience.) or

Experience: Two years of experience in the Department of Motor Vehicles with 18 months of that experience performing the duties of a Motor Vehicle Technician, Range B, or Motor Vehicle Field Representative, Range C. (Additional college education may be substituted for the required general experience on the basis of one year of education for six months of general experience.)

Or III

Education: Equivalent to completion of two years (60 semester units or 90 quarter units) of college education which must have included at least one course in English composition and two courses in psychology, sociology, or a

related field. (Students in their second year of college will be admitted to the examination, but they must produce evidence of completion of the required 60 semester or 90 quarter units before they can be considered eligible for appointment.) and

Experience: One year of experience in the Department of Motor Vehicles performing the duties of a class with a level of responsibility comparable to that of at least a Motor Vehicle Assistant, Range B; Motor Vehicle Technician, Range A; or Motor Vehicle Field Representative, Range B. (Additional college education may be substituted for the required general experience on the basis of one year of education for six months of general experience.) or

Experience: Two years of experience in the Department of Motor Vehicles with at least 18 months of that experience performing duties of a class with a level of responsibility comparable to that of at least an Office Assistant, Range B. (Additional college education may be substituted for the required general experience on the basis of one year of education for six months of general experience.)

## KNOWLEDGE AND ABILITIES

Knowledge of: Rules of Evidence, Administrative Law, applicable case law, hearing procedures, and practices; spelling, grammar, punctuation, and modern English usage; effective writing and interviewing techniques; provisions of the California Vehicle Code; rules, regulations, and policies of the Department of Motor Vehicles relating to driver licenses, traffic laws, and financial responsibility requirements; medical terminology; principles, procedures, and practices relating to driver control and driver safety; departmental technical hearing procedures relating to driver licenses and methods of examination; physical and mental disabilities as they relate to driving performance; rules of evidence and regulations relating to the types of hearings, interviews, and reexaminations conducted; appropriate provisions of Administrative Law, Government Code, the Code of Civil Procedures, and rules governing the admissibility of evidence, as they apply to the conduct of Administrative Per Se and other hearings and Departmental Reviews and Quality Control Reviews.

Ability to: Interpret and apply statutes and applicable case law, regulations, and policies relating to driver licenses and traffic safety; interpret and apply financial responsibility requirements; establish and maintain cooperative relations with persons contacted concerning driver safety work and procedures; conduct departmental hearings, interviews, and driver license reexaminations relating to issuance and control of driver licenses; communicate effectively; examine and cross-examine witnesses, rule on motions and objectives, weigh

evidence, identify facts, resolve issues of credibility, identify appropriate law, apply law to facts, and make fair and impartial decisions which are based solely upon the merits of the case; analyze situations accurately and take effective action; conduct Departmental Reviews, Administrative Per Se Hearings, interviews, and reexaminations relating to issuance and control of driver licenses; exercise sound judgment in the application of rules, regulations, policies, and laws; make appropriate decisions on the basis of evidence, fairness, and equity.

## SPECIAL PERSONAL CHARACTERISTICS

Demonstrated willingness to accept, and an aptitude for, increasing responsibility; desire to pursue on-the-job training; and possession of a good driving record which includes no convictions within the past three years for driving under the influence of alcohol or drugs, hit and run, reckless driving, or manslaughter. Also included is not being a negligent operator as defined in Section 12810 of the Vehicle Code and having no Administrative Per Se suspensions (Sections 13353 and 13353.2 VC) within the past three years, no Financial Responsibility suspensions (Sections 16004a, 16020, and 16070 VC) within the past three years, no failures to answer a signed promise to appear (40508 VC), or no failures to pay a lawfully imposed fine (40509 VC). If a person has failed to answer his/her signed promise to appear (40508 VC) or has failed to pay a lawfully imposed fine (40509 VC), he/she will not be hired until the court case has been cleared.