Filed 1/23/18 (mod.); pub. order 1/25/18 follows unmodified opinion (attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAUL ZUNIGA,<br><br>      Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, INTERACTIVE TRUCKING, INC., et al.,<br><br>      Respondents. | A143290<br><br>(WCAB No. ADJ2563341) |

BY THE COURT:

It is ordered that the opinion filed herein on January 12, 2018, be modified as follows:  On page 12, the last paragraph in section B of the Discussion is changed to:  "In sum, section 4610.6, subdivision (f) prevents the Board from ordering an IMR organization to disclose the names of IMR reviewers, and we therefore reject Zuniga's various arguments to the contrary."  Footnote 11 remains at the end of the paragraph.

This modification does not change the judgment.

Dated: _____          _____

                                                Kline, P.J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAUL ZUNIGA,<br><br>        Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION<br>APPEALS BOARD, INTERACTIVE<br>TRUCKING, INC., et al.,<br><br>        Respondents. | A143290<br><br>(WCAB No. ADJ2563341) |

As a result of amendments to California's workers' compensation law that took effect in 2013, an injured worker may challenge a decision denying medical treatment by requesting a determination of medical necessity from an independent medical review (IMR) organization.  (Lab. Code, §§ 139.5, 4610.5.[1])  The IMR organization, which is regulated by the Division of Workers' Compensation of the Department of Industrial Relations (Division) and operates under contract with the administrative director of the Division, designates one or more medical professionals to review pertinent medical records, determine whether the disputed treatment is medically necessary, and prepare a written report including statutorily-required findings to support the reviewer's determination.  (§ 139.5, subd. (a)(1), § 4610.6, subds. (a) through (e); Cal. Code Regs., tit. 8, § 9792.10.1 et seq.)  The determination of the IMR organization is deemed to be the

---

[1] Further undesignated statutory references are to the Labor Code.

1

determination of the administrative director, and is binding on all parties, subject to appeal on narrow statutory grounds. (§ 4610.6, subds. (g) & (h).)

Of significance to the matter before us, the IMR organization is required by statute to describe the qualifications of the medical professionals who prepare the determination of medical necessity *and* to keep the names of the reviewers confidential in all communications outside the IMR organization. (§ 4610.6, subd. (f).)

Petitioner Saul Zuniga availed himself of the IMR process and then petitioned the Workers' Compensation Appeals Board (Board) to disclose the names of the reviewers. When the Board declined to do so, citing section 4610.6, subdivision (f), Zuniga filed this writ petition contending that the statute does not prohibit the Board from ordering disclosure and that any contrary reading violates due process. We granted Zuniga's petition for writ of review and now affirm the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Background on Worker's Compensation*

To provide context, we summarize the relevant aspects of workers' compensation procedure as it exists in the wake of major reforms that took effect in 2004 and 2013, drawing on the account by our colleagues in Division One in *Stevens v. Workers' Comp. Appeals Bd.* (2015) 241 Cal.App.4th 1074, 1081 (*Stevens*).)

An injured worker's physician "submits a treatment recommendation that is reviewed under the employer's UR [utilization review] process. (§ 4610.) A 'medical director' designated by the employer or insurer reviews all information 'reasonably necessary' to determine whether to approve, modify, or deny the recommendation. (§ 4610, subd. (d).) . . . [¶] A UR decision favoring the worker becomes final, and the employer is not permitted to challenge it. (See § 4610.5, subd. (f)(1).) But if the UR decision modifies, delays, or denies a request, the worker may seek review through an IMR. (§ 4610.5, subd. (d).) In other words, the IMR process gives workers, but not employers, a second chance to obtain a decision in their favor." (*Stevens*, *supra*, 241 Cal.App.4th at p. 1090, fn. omitted.)

2

"The IMR is performed by an independent review organization, which assigns medical professionals to review pertinent medical records, provider reports, and other information submitted to the organization or requested from the parties. (§ 4610.6, subd. (b).) The physician reviewer must approve the requested treatment if it is 'medically necessary based on the specific medical needs of the employee and the standards of medical necessity as defined in subdivision (c) of Section 4610.5.' (§ 4610.6, subd. (c).) The IMR determination must state whether the disputed service is medically necessary, identify the employee's medical condition and the relevant medical records, and set forth the relevant findings associated with the standards of medical necessity. (§ 4610.6, subd. (e).) These standards include, in the order listed in the statute: (1) the [Medical Treatment Utilization Schedule, which was adopted in 2007 and since updated], (2) peer-reviewed scientific and medical evidence regarding the effectiveness of the disputed treatment; (3) nationally recognized professional standards; (4) expert opinion; and (5) generally accepted standards of medical practice. (§ 4610.5, subd. (c)(2).) If multiple medical professionals review a case, a majority must agree on the final decision, and if they are evenly split, the decision must favor the worker. (§ 4610.6, subd. (e).) Decisions must include the reviewing medical professionals' qualifications, but the independent review organization is to 'keep the names of the reviewers confidential in all [outside] communications.' (§ 4610.6, subd. (f).) The IMR determination is deemed as a matter of law to constitute the determination of the director [the administrative director of the Division] and is binding on all parties. (§ 4610.6, subd. (g).)

"A worker who disputes the IMR determination may appeal it to the Board. (§ 4610.6, subd. (h).) . . . [T]he only specified grounds for relief . . . are that the director acted without authority, the decision was procured by fraud, the physician reviewer had a material conflict of interest, the decision was the result of bias, or the decision was based on a plainly erroneous fact that is not a matter subject to expert opinion. (§ 4610.6, subd.

(h).)[2]  If the Board reverses the decision . . . it may only remand the case for a new IMR. (§ 4610.6, subd. (i).)"[3]  (*Stevens*, *supra*, 241 Cal.App.4th at pp. 1090-1091.)  The new IMR is to be performed by a different independent review organization, but if a different organization is not available, as will be the case if there is only one authorized IMR organization, the new IMR is to be performed by a different reviewer in the organization that performed the previous IMR.  (§ 4610.6, subd. (i).)

"Finally, a Board decision can . . . be challenged by filing a writ of review in the Court of Appeal.  (§ 5950.) . . . [A]ppellate courts are . . . explicitly precluded from making 'a determination of medical necessity contrary to the determination of the independent medical review[er]' (§ 4610.6, subd. (i)) . . . ."  (*Stevens*, *supra*, 241 Cal.App.4th at p. 1091.)

---

[2] Section 4610.6, subdivision (h) states:  "A determination of the administrative director pursuant to this section may be reviewed only by a verified appeal from the medical review determination of the administrative director, filed with the appeals board . . . and served on all interested parties within 30 days of the date of mailing of the determination to the aggrieved employee or the aggrieved employer.  The determination of the administrative director shall be presumed to be correct and shall be set aside only upon proof by clear and convincing evidence of one or more of the following grounds for appeal:  [¶] (1)  The administrative director acted without or in excess of the administrative director's powers.  [¶] (2) The determination of the administrative director was procured by fraud.  [¶] (3) The independent medical reviewer was subject to a material conflict of interest that is in violation of Section 139.5.  [¶] (4) The determination was the result of bias on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability.  [¶] (5) The determination was the result of a plainly erroneous express or implied finding of fact, provided that the mistake of fact is a matter of ordinary knowledge based on the information submitted for review . . . and not a matter that is subject to expert opinion."

[3] Although an employer cannot dispute a UR decision that is favorable to an employee (§ 4610.5, subds. (d) & (f)(1)), nothing in the statute prohibits an employer from disputing an IMR determination.  (See § 4610.6, subd. (h) [referring to "the aggrieved employee or the aggrieved employer" in authorizing appeals from IMR determinations].)

4

B.     *Reviews of Zuniga's Treatment Plan*

Zuniga's employer, Interactive Trucking, Inc., was insured for workers' compensation by the State Compensation Insurance Fund (State Fund).[4]  After a work-related injury to his left shoulder in 2007, Zuniga underwent several surgical procedures. He was left with continuing pain, and as of 2013 he had for several years been a patient of a pain-management specialist, Dr. Grant, who administered and monitored several medications.  Zuniga's pharmaceutical regimen changed little from about 2011 to 2013, when State Fund submitted Dr. Grant's prescriptions for utilization review.  The result was that one of the five prescriptions was approved and the other four were denied.

Zuniga appealed the decision through the IMR process.  As part of that process, State Fund sent relevant documents to the IMR organization, Maximus Federal Services (Maximus).  The result of the IMR was a "Final Letter of Determination" approving one of the four previously rejected prescriptions and rejecting the other three.

Zuniga filed a timely appeal, alleging that the IMR decision resulted from erroneous factual findings.  After a hearing, the administrative law judge found that each of the IMR denials was based on a plainly erroneous finding of fact, and on that basis reversed the IMR decision.  Because Maximus was the only authorized IMR organization during the pendency of the case, the matter was remanded to Maximus for review by a different reviewer.

On February 25, 2014, while the second IMR was in process, Zuniga filed a petition asking the Board to order the IMR organization to disclose the identities of the first and second IMR reviewers to the parties or to the judge.  Although the second IMR had not been completed, Zuniga argued that it is a denial of due process for an IMR to refuse to disclose the identities of the reviewers when the decision of the first reviewer is

---

[4] State Fund is an entity established by the Legislature, " 'at once both an agency of the state and an insurance carrier.' " (*California Attorneys v. Brown* (2011) 195 Cal.App.4th 119, 124, quoting *P.W. Stephens, Inc. v. State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833, 1835.)  State Fund claims to be the state's largest provider of workers' compensation insurance. (<https://content.statefundca.com/news/Factsheet.asp> [as of Jan. 12, 2018].)

reversed and the dispute is referred to a different reviewer in the organization, claiming that without knowing the identities of the reviewers, an applicant is deprived of the opportunity to "dispute the findings of the second reviewer on the ground that they were made by the same reviewer whose opinion was reversed." Zuniga argued that if the same reviewer wrote both reports, then the IMR could be challenged on the ground that director would have acted outside his authority (§ 4610.6, subd. (h)(1)) because the prohibition against using the same reviewer would be violated. (§ 4610.6, subd. (i).) He also argued that if the same reviewer wrote both reports, the determination might well have been procured by fraud (§ 4610.6, subd. (h)(2)), and the reviewer might have a material conflict of interest (§ 4610.6, subd. (h)(3)) because he or she would be reviewing his or her own prior decision.

Before Zuniga's petition was heard, Maximus issued a second IMR determination, labeled a "Final Determination After Re-Review," stating that it "was the product of a complete re-review conducted pursuant to a court order," and "was performed by a medical reviewer who was not associated with the original review." This time, the IMR approved two of the four prescriptions that had been rejected in the utilization review, and disapproved the other two.[5] Zuniga did not appeal the second IMR determination.

A hearing on Zuniga's petition to learn the identities of the IMR reviewers was held in May 2014. In June the administrative law judge issued his findings and order, concluding that in view of the confidentiality provision of section 4610.6, subdivision (f), he was required to deny Zuniga's request to compel Maximus to disclose the identities of the reviewers.

Zuniga petitioned for reconsideration, arguing that the statute did not prohibit the Board from ordering Maximus to identify the reviewers, and that the "secrecy provision"

---

[5] Despite this different result, and despite the fact that the two IMRs offer different rationales for their decisions disapproving medications, at oral argument Zuniga's counsel characterized the two IMR determinations as "virtually the same." Zuniga points to nothing in the record that suggests the two IMR determinations were prepared by the same physician.

of section 4610.6, subdivision (f) "when read within the statute as a whole, can only be said to apply until the IMR decision is successfully challenged."  The administrative law judge issued a report and recommendation that reconsideration be denied, which was adopted by the Board.

Zuniga timely filed a petition for a writ of review as authorized by section 5950.[6]  After briefing was completed, we issued a writ of review and directed Zuniga to serve a copy of his petition on the administrative director of the Division, who then filed an informal opposition.[7]  We subsequently granted the California Worker's Compensation Institute's unopposed application to file an amicus curiae brief in support of respondent State Compensation Insurance Fund, and also granted an unopposed request from respondents Interactive Trucking, Inc. and State Fund that we take judicial notice of some legislative history materials.[8]

_____

[6] State Fund argues that because Zuniga has not appealed the second IMR determination, he lacks standing to file a petition for a writ of review.  But Zuniga is aggrieved by, and seeks review of, the Board's denial of his request for the identities of the IMR reviewers, which he made on the basis of the result of the first IMR determination.  It may be that Zuniga's appeal is moot: even if we conclude that the Board should have ordered the IMR organization to disclose the names of the reviewers who prepared the first and second IMR determinations, it is unclear what effective relief we would be providing, because Zuniga did not appeal the second IMR determination, and the time to appeal it has passed.  (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [an appeal will be dismissed as moot when the appellate court cannot grant effective relief]; § 4610.6, subd. (h) [appeal must be served within 30 days of the mailing of the IMR determination].)  Nevertheless, we address the merits of Zuniga's petition because the issue is likely to recur between the parties.  (*Los Angeles International Charter High School v. Los Angeles Unified School Dist.* (2012) 209 Cal.App.4th 1348, 1354 ["an exception to the mootness doctrine is the distinct possibility that the controversy between the parties may recur"].)

[7] Accordingly, to the extent there is merit to State Fund's arguments that the administrative director did not receive proper notice of Zuniga's petition and should have been included as a party, those arguments are moot.

[8] Interactive Trucking, Inc. and State Fund gave notice under California Rules of Court, rule 8.254 of two authorities issued after the parties completed their briefing: *Stevens, supra,* 241 Cal.App.4th 1074, and *Ramirez v. Workers' Comp. Appeals Bd.* (2017) 10 Cal.App.5th 205 (*Ramirez*).  *Stevens* is discussed in the administrative

## DISCUSSION

A.  *Applicable Law and Standard of Review*

We interpret workers' compensation statutes de novo, while giving great weight to the Board's interpretation.  (*Coca-Cola Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (2011) 194 Cal.App.4th 809, 815.)

"A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.  [Citations.]  In construing a statute, our first task is to look to the language of the statute itself.  [Citation.]  When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms.  [Citations.]  [¶] Additionally, however, we must consider [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.  'We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citations.]' [Citations.]  ' "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.]  . . . .  "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.]  Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' [Citations]." (*Du Bois v. Worker's Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388.)

In evaluating Zuniga's due process claim, "we are mindful that '[a]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.  Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.' (*Lockheed Aircraft Corp. v. Superior Court of Los Angeles County* (1946) 28 Cal.2d 481, 484; see also

director's informal opposition and in the amicus brief.  In a focus letter, we asked the parties to be prepared to address at oral argument how *Stevens* and *Ramirez* apply to this case, which they did.

8

[*Stevens*, *supra*,] 241 Cal.App.4th [at p.] 1092.)" (*Chorn v. Workers' Comp. Appeals Bd.* (2016) 245 Cal.App.4th 1370, 1381.)

B.      *The Board Has No Authority to Order Disclosure of the Identity of IMR Reviewers*

We have no difficulty concluding that section 4610.6, subdivision (f), which says, "The [IMR] organization shall keep the names of the reviewers confidential in all communications with entities or individuals outside the [IMR] organization," prohibits the Board from ordering Maximus to disclose the identities of the individuals who conducted the IMRs of Zuniga's request for treatment.  The language of the statute is unambiguous.  Zuniga cites no statute or case that suggests the Board has the authority to order the IMR to perform an action that is specifically prohibited by statute.  Nor does he cite any statute or case that suggests this unambiguous confidentiality requirement is abrogated by the reversal of an IMR decision that was based on an erroneous finding of fact.  To the contrary, when an IMR determination is reversed the *only* authorized action is for the Board to remand the dispute to the administrative director to submit it for a *new* IMR review.  (§ 4610.6, subd. (i).)

The confidentiality requirement of section 4610.6, subdivision (f) is consistent with the Legislature's purpose in "establishing the IMR process to resolve workers' challenges to adverse UR decisions.  (Stats. 2012, ch. 363, § 1.)" (*Stevens*, *supra*, 241 Cal.App.4th at p. 1089.)  The Legislature found that "[t]he existing process of appointing qualified medical evaluators to examine patients and resolve treatment disputes [was] costly and time-consuming, and it prolong[ed] disputes and cause[d] delays in medical treatment for injured workers." ([Stats. 2012, ch. 363,] § 1(f).)  The IMR process was intended to change the previously existing system in which "each side attempt[ed] to obtain medical opinions favorable to its position, and then counsel for each side trie[d] to convince a workers' compensation judge based on this evidence what the proper treatment is.  This system of 'dueling doctors' with lawyer/judges making medical decisions has resulted in an extremely slow, inefficient process that many argue does not provide quality results."  (Sen. Com. on Labor and Industrial Relations, Analysis of Sen.

9

Bill No. 863 (2011-2012 Reg. Sess.) as amended Aug. 30, 2012, p. 6.) In the IMR process, "a conflict-free medical expert would be evaluating medical issues and making sound medical decisions, based on a hierarchy of evidence-based medicine standards drawn from the health insurance IMR process, with workers' compensation-specific modifications." (*Id.* pp. 6-7.) The Legislature found that "[t]imely and medically sound determinations of disputes over appropriate medical treatment require the independent and unbiased medical expertise of specialists." (Stats. 2012, ch. 363, § 1(f).)

The Legislature's understanding that confidentiality helps to ensure that IMR reviewers are independent and unbiased is reflected in an analysis of a proposed, but not adopted, change to the IMR process. Senate Bill No. 626 was introduced in 2013 to reverse provisions of the 2012 workers' compensation reform, which had included the establishment of the IMR process. (Sen. Com. on Labor and Industrial Relations, Analysis of Sen. Bill No. 626 (2013-2014 Reg. Sess.) as amended Apr. 18, 2013, p. 1.) Among other things, the bill proposed removing the confidentiality requirement for IMR reviewers. (*Id.* p. 3.) The bill analysis commented that, while the IMR process had been in effect for only six months, it "promises to speed up medical treatment and increase objectivity in the provision of medical services." (*Id.* at p. 4.) The analysis further commented that, while the full impact of removing the confidentiality requirement was unknown, "one fear is that it would <u>reduce the independence of the reviewer</u>." (*Id.* at pp. 3-4.)

We are not persuaded by Zuniga's argument that the confidentiality requirement conflicts with section 4610.6, subdivision (i), which provides that when an IMR determination is reversed, the Board must remand the matter to another IMR organization, or, if there is only one organization, as is the case here, to the original organization for review by a different reviewer. Zuniga argues that the Board has authority to enforce and modify its orders, as set forth in section 133, and therefore if it is to enforce orders made under section 4610.6, subdivision (i), it must have the authority to compel the disclosure of IMR reviewers' identities. Zuniga argues that if the Board could not compel disclosure of reviewers' identities, "section 4610.6(i) would be

10

rendered meaningless because the remedy available to the Board would become unenforceable." As the administrative director's informal opposition correctly points out, questions about whether two IMRs were performed by different reviewers can be addressed short of releasing the reviewers' names, such as by providing additional information about their backgrounds, or by requiring declarations under penalty of perjury from an officer of the IMR organization or a reviewer. Zuniga points to no authority to suggest that a statute is rendered meaningless simply because his preferred method of enforcing it is unavailable.

Similarly, Zuniga asserts that the confidentiality requirement conflicts with subdivisions (h)(1) through (h)(4) of section 4610.6, which set forth four of the five grounds on which an appeal of an IMR determination may be taken: the director acted without authority, the decision was procured by fraud, the physician reviewer had a material conflict of interest, or the decision was the result of bias. Zuniga contends that an injured employee cannot prove any of those grounds unless the employee and the Board are aware of the identity of the reviewer, and that therefore the confidentiality provision of section 4610.6, subdivision (f) renders meaningless these grounds for appeal.[9] We are not persuaded. For example, if an IMR decision were found to be based on an incorrect interpretation of the relevant medical standards, the IMR could be overturned on the grounds that the director acted without authority. (*Stevens*, *supra*, 241 Cal.App.4th at p. 1101.) Impermissible bias influencing a determination might be reflected in the nature or text of the IMR determination.[10] And although confidentiality

[9] Zuniga implicitly concedes, as he must, that even without knowing the identity of the IMR reviewer, an IMR determination can successfully be appealed on the ground that it is based on a plainly erroneous finding of fact, the fifth listed ground for appealing an IMR determination. (See § 4610.6, subd. (h)(5).)

[10] For example, an IMR review may be subject to challenge for bias if it includes language indicating that the determination is based on some generalization about race, ethnic group, age, sex or disability, rather than on the "specific medical needs of the employee and the standards of medical necessity." (§ 4610.6, subd. (c).) Here, the IMRs include no such language.

11

may make it more difficult to challenge an IMR determination on the basis of a conflict of interest, "workers have the opportunity to obtain significant other information bearing on conflicts of interest, including information about the IMR organization's 'method of selecting expert reviewers and matching [them] to specific cases,' system of identifying and recruiting expert reviewers, and method of 'ensur[ing] compliance with the [statutory] conflict-of-interest requirements.' (§ 139.5, subds. (d)(2)(F)-(H); see *id.* subd. (e).)" (*Stevens*, *supra*, 241 Cal.App.4th at p. 1100, fn. 18; see also *Ramirez*, *supra*, 10 Cal.App.5th at p. 229.)

In sum, section 4610.6, subdivision (f) prevents the Board from ordering an IMR to disclose the names of IMR reviewers, and we therefore reject Zuniga's various arguments as to why the Board can order an IMR organization to release names of reviewers.[11]

C.      *Keeping Reviewers' Identities Confidential Does Not Violate Due Process*

Zuniga argues that if section 4610.6, subdivision (f) precludes the Board from ordering the disclosure of the identity of IMR reviewers, then that statutory provision and the entire IMR scheme violate the federal and state due process rights of injured workers. He argues that "due process requires a party to a workers' compensation claim [to] be able to verify the qualifications of the person making the final determination as to whether benefits are to be awarded in a particular case, but the law currently forbids such

_____

[11] Over the course of this litigation, Zuniga's position on why the Board can order the disclosure of reviewer names has changed. Initially, after the first IMR was reversed but before the second was issued, Zuniga argued to the Board that the names should be disclosed once an IMR is overturned so that if the second IMR is performed by the same person the applicant can dispute it on that ground. After the second IMR was issued, he argued that knowing the identities of the reviewers would open the possibility of cross-examining them "to determine if there was cause for further appeal." Permitting cross-examination for the purpose of uncovering additional grounds to challenge an IMR determination would undermine the Legislature's intent in adopting the IMR provisions to reduce litigation and its attendant costs and delays. (Stats. 2012, ch. 363, § 1(b); see also *Stevens*, *supra*, 241 Cal.App.4th at p. 1091.)

an inquiry."[12] He argues that the IMR reports are testimonial in character and that therefore due process requires he be allowed to cross-examine the doctors issuing the reports, which he cannot do if the identities of IMR reviewers are confidential.[13] We are not persuaded.

To address Zuniga's California due process claim, it is necessary to understand the constitutional basis of the workers' compensation law. Under Article XIV, Section 4 of the California Constitution, the Legislature "is . . . expressly vested with plenary power *unlimited by any provision of this Constitution*, to create, and enforce a complete system of worker's compensation by appropriate legislation." (Cal. Const., art. XIV, § 4, italics added.) As the Court of Appeal held in *Stevens,* the due process clause of the California Constitution (Cal. Const., art. I, § 7, subd. (a)) does not limit the Legislature's authority to create a workers' compensation system. (*Stevens*, *supra*, 241 Cal.App.4th at pp. 1092-1093.) Section 4 therefore "supersedes the state Constitution's due process clause with respect to legislation passed under the Legislature's plenary powers over the workers' compensation system." (*Id.* at p. 1093.)

Zuniga's federal due process claim fails as well. The Court of Appeal in *Stevens* concluded that the IMR process, including the confidentiality requirement of section 4610.6, subdivision (f), does not violate the federal due process clause. (*Stevens*, *supra*, 241 Cal.App.4th at pp. 1096-1101; see also *Ramirez, supra,* 10 Cal.App.5th at pp. 227-

---

[12] Zuniga also argues that if the Board cannot order the disclosure of reviewers' identities, the decisions are unreviewable, and therefore due process is violated. His own experience in contesting an IMR determination shows that his premise is false: the first IMR decision was reviewed and reversed without the identity of the reviewer being revealed.

[13] Zuniga also argues that the statutory scheme violates his right to due process because in an IMR determination "an unknown and unknowable person with unknown motives and biases makes a decision regarding the necessity of a particular medical treatment, and no court or administrative tribunal may analyze or review that decision." Zuniga's characterization of the IMR process is flatly incorrect. Under section 4610.6, subdivision (h), IMR determinations *are* subject to review, and Zuniga sought, and received, review of the IMR determination in his case.

13

229.) We agree with the reasoning in *Stevens*, which we summarize here. The Court of Appeal in *Stevens* assumed that an IMR determination is state action and implicates a protected property interest, which are prerequisites to a federal due process claim. (*Stevens*, *supra*, 241 Cal.App.4th at pp. 1096-1098.) The court concluded that even so, Stevens's due process claim failed because the IMR process "afford[s] ample process. 'The core of due process is the right to notice and a meaningful opportunity to be heard.' (*LaChance v. Erickson* (1998) 522 U.S. 262, 266; see *Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 547.) When due process must be afforded, the amount of process required is determined by balancing the affected private interest, the risk of erroneous deprivation of this interest, the probable value, if any, of additional or substitute safeguards, and the government's interest in the process. (*Mathews v. Eldridge* (1976) 424 U.S. 319, 334-335.)" (*Stevens*, *supra*, 241 Cal.App.4th at p. 1098.)

In *Stevens*, the Court of Appeal was guided by *California Consumer Health Care Council, Inc. v. California Department of Managed Health Care* (2008) 161 Cal.App.4th 684 (*California Consumer*), a case involving the denial of medical claims under the Knox-Keene Act,[14] where requests for medical care are reviewed under an IMR process in which insurers are permitted to see and rebut claimants' filings, but claimants are not permitted to see and rebut insurers' filings. (*Stevens*, *supra*, 241 Cal.App.4th at p. 1098.) Despite that disparity, after balancing the interests in *California Consumer*, the Court of Appeal upheld the Knox-Keene Act's IMR process against a federal due process challenge. (*California Consumer*, *supra*, 161 Cal.App.4th at p. 692.) In *Stevens*, the Court of Appeal concluded that workers' interest in obtaining medical services was similar to that of the patients in *California Consumer*, but with multiple layers of review the risk of erroneous deprivations under the worker's compensation system was likely less, and certainly not more, than under the Knox-Keene Act. (*Stevens*, *supra*, 241 Cal.App.4th at p. 1099.) And the court concluded that government's interest in the IMR

---

[14] The Knox-Keene Act is the Knox-Keene Health Care Service Plan Act of 1975, Health and Safety Code section 1340 et seq., which regulates California health maintenance organizations.

14

process, which was "expressly and comprehensively identified by the Legislature itself when it established that process," was at least as compelling as the government interest in "not being forced to disclose insurance documents" in *California Consumer*. (*Ibid.*)

The court in *Stevens* specifically considered and rejected the argument that the IMR process violates due process because the reviewers are not identified and cannot be cross-examined. (*Stevens, supra,* 241 Cal.App.4th at pp. 1099-1100.) Contrary to Zuniga's assertion, IMR determinations are not testimonial in character. The court in *Stevens* concluded that "[IMR] reviewers are not workers' adversaries: they are statutorily authorized decision makers. We have found no authority for the proposition that a party has a right to cross-examine such decision makers." (*Stevens*, *supra*, 241 Cal.App.4th at p. 1099.)[15]

As the *Stevens* court explained, "injured workers requesting treatment under the workers' compensation system are given detailed explanations of the reasons for a denial or modification of their request, and they are given multiple opportunities to submit evidence and challenge those decisions. 'Procedural due process is not a static concept, but a flexible one to be applied to the needs of the particular situation[s] . . . .' ([*Jennings*

_____

[15] In claiming that IMR reports are testimonial in character, Zuniga relies on *Massachusetts Bonding & Ins. Co. v. Industrial Accident Commission* (*Himes*) (1946) 74 Cal.App.2d 911, a case in which the Court of Appeal ruled that due process required a workers' compensation applicant to be able to cross-examine physicians whose reports were submitted into evidence. The case is inapposite. Under the system at issue in *Himes*, the commission made determinations on medical issues on the basis of evidence that could include live testimony and physicians' reports from petitioners and respondents, which might well conflict, and it was well-established that due process required that any reports filed after an open hearing be subject to cross-examination. (*Id.* at pp. 913-914, 916.) *Himes* held that due process likewise required that testimony and reports received as evidence during the hearing be subject to cross-examination. (*Id.* at pp. 915-916.) Here, in contrast, the Board does not make determinations on medical issues. "In no event shall a worker's compensation administrative law judge, the appeals board, or any higher court make a determination of medical necessity contrary to the determination of the [IMR] organization." (§ 4610.6, subd. (i).) IMR determinations can be reversed only on non-medical grounds (§ 4610.6, subd. (h)), which have been characterized as "nonsubstantive." (*Ramirez*, *supra*, 10 Cal.App.5th at p. 213.)

15

*v. Jones* (1985)] 165 Cal.App.3d [1083], 1090-1091.) The IMR is only one aspect of the process afforded to workers who request treatment, and we conclude that the process in its entirety provides sufficient due process protections." (*Stevens*, *supra*, 241 Cal.App.4th at pp. 1099-1100, fn. omitted; see also *Ramirez*, *supra*, 10 Cal.App.5th at p. 229.) These protections include the extensive conflict-of-interest and reporting requirements imposed by statute on the IMR organization. (§ 139.5, subds. (c) through (e).) For example, neither the IMR organization, nor its officers, directors or employees, nor the experts it designates to conduct a review is permitted to have any material affiliation, whether professional, financial, or familial, with the employer, insurer, claims administrator, utilization review organization, employee, physician or other provider involved in the treatment being disputed, or the facility where the services recommended by any party would be provided. (§ 139.5, subd. (c)(2).) The IMR organization must identify its major stockholders and major bond or note holders, provide information about affiliated organizations (including the nature and extent of any ownership or control, and that affiliated organization's type of business) and revenue sources, and provide the names and biographical information about the organization's directors, officers and executives, including their past or present relationships with such entities as workers' compensation insurers and medical provider networks. (§ 139.5, subd. (d)(2).) Further, the IMR organization must "demonstrate that it has a quality assurance mechanism in place" that, among other things insures the independence of the medical experts designated to make IMR determinations and adequate screen for conflicts of interest. (§ 139.5, subd. (d)(3)(E).) And the Division must provide "upon the request of any interested person, a copy of all nonproprietary information, as determined by the administrative director, filed with it" by an IMR organization. (§ 139.5, subd. (e).)

Zuniga mischaracterizes the IMR process as one that provides for no review, and does not even attempt to identify or balance the interests implicated in this case. We conclude that Zuniga has not demonstrated that his due process rights are violated by the statutory provision that the identity of IMR reviewers must remain confidential.

**DISPOSITION**

The Board's orders are affirmed.  The parties are to bear their own costs.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

Filed 1/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAUL ZUNIGA,<br><br>        Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, INTERACTIVE TRUCKING, INC., et al.,<br><br>        Respondents. | A143290<br><br>(WCAB No. ADJ2563341)<br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

BY THE COURT:

The opinion in the above-entitled matter filed on January 12, 2018, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____        _____

                                                    Kline, P.J.

19

Court:  Workers' Compensation Appeals Board

WCAB Judge:  Hon. Christopher Miller


Attorneys for Petitioner                                    Jonathan J. Belaga
                                                            Lisa E.. Ivancich
                                                            Pegnim &Ivancich


Attorneys for Respondent                                    Lisa A. Liebson
State Compensation Insurance Fund                            Mary A. Huckabaa
                                                            Cynthia J.. Woelke


Attorneys for Amicus Curiae                                  Michael A. Marks
California Workers' Compensation                             Law Offices of Allweiss & McMurtry
Institute in support of Respondent                           Travis E. Cochran
                                                            Lozano Smith


A143290, *Zuniga v. Workers' Compensation Appeals Board*