Filed 1/30/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RICHARD LOUIS BROWN, | C102554 |
| Plaintiff and Appellant, | (Super. Ct. No. 24WM000142) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Chang, Judge. Affirmed.

Richard Louis Brown, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kristin M. Daily and Joanne Chen, Deputy Attorneys General, for Defendant and Respondent.

1

The Department of Motor Vehicles (Department) temporarily suspended appellant Richard Louis Brown's driver's license after conducting a driver reexamination initiated by an undisclosed third-party reporter. Appellant filed a petition for writ of mandate with the trial court demanding the Department provide the name of the reporter; the trial court denied the petition. On appeal, appellant contends the nondisclosure of the reporter's identity violates due process. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

The Department received a completed request for driver reexamination form "DS 699" from an undisclosed reporter asking the Department to reevaluate appellant's ability to drive safely. The Department sent appellant a letter, dated June 26, 2024, notifying him "it is necessary for the [D]epartment to review your driving qualifications." The letter stated: "After a review of your medical information, you may be required to complete a written, vision, or driving test and/or you may be required to appear virtually by video or by telephone or in-person." The letter also warned appellant his license would be suspended if he did not have a medical form completed by a physician and returned by July 20, 2024.

---

[1] We deny appellant's request for judicial notice of subpoenas he has filed with the Department because he provides no legal support or analysis about how these are proper subjects for judicial notice. (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744 ["The burden is on the party seeking judicial notice to provide sufficient information to allow the court to take judicial notice"].) Appellant also filed a request to file a supplemental brief, which we denied. This request included an improperly joined request for judicial notice of documents related to a second reexamination proceeding with the Department. (See Cal. Rules of Court, rule 8.252(a)(1) ["To obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order"].) In the interest of completeness, we also specifically deny that request because the documents are not relevant to the issue appellant presents in this appeal, namely whether the first reexamination process violated his due process rights. (See *City and County of San Francisco v. Uber Technologies, Inc.* (2019) 36 Cal.App.5th 66, 72, fn. 3 [denying requests for judicial notice for irrelevant documents].)

Appellant submitted a driver medical evaluation completed by a physician. The physician noted, "[Appellant] is a new patient . . . . Therefore, any prior health issues, if any, are unknown to me at this time. [¶] He is currently alert and oriented, and on [the] day of [the] exam, did not exhibit issues affecting his driving." However, the physician checked "[y]es" for a box asking: "Would you recommend a driving test be given by [the Department]?" (Some capitalization omitted.)

The Department held a remote reexamination hearing on August 24, 2024. The hearing officer started by marking three exhibits for examination: A "form DS-699, the request for driver re-examination"; appellant's completed medical evaluation; and appellant's driving record. The hearing officer then questioned appellant about his health and appellant asserted he had no medical issues, did not take any prescriptions, and did not consume alcohol. The hearing officer then told appellant he would have to take a written and driving test. Appellant retook both tests and failed the driving test on September 5, 2024.

The Department suspended appellant's license effective September 15, 2024. The Department explained in a written report that the reexamination hearing officer signed: "The ability of [appellant] to operate a motor vehicle safely is affected because of a mental condition in that: [Appellant] submitted a driver medical evaluation . . . . [Appellant's] physician did not advise against driving but recommended a driving test given by the [D]epartment. . . . [Appellant] did not demonstrate the ability to drive safely. If [appellant] was allowed to drive at this time he may cause and/or contribute to an accident causing injury to [him]self or other motoring public. For these reasons, cause exists to suspend [appellant's] driving privilege." The Department also sent appellant an order of suspension indicating his license was suspended because his "drive test result(s) was/were unsatisfactory." The order also advised appellant of his right to request a hearing.

A second remote hearing was held on September 16, 2024. The second hearing was conducted by a different hearing officer who overturned appellant's suspension at the conclusion of the hearing. This officer noted the only issue identified in appellant's medical form was elevated blood pressure. Though the physician checked the box recommending a driving test, there was no medical issue associated with that recommendation so appellant "shouldn't have been subject to all the testing, like a written test or a driving test." The hearing officer continued, "So, I'm not really sure why the previous hearing officer made such an action. I'm not blaming the hearing officer of any[thing] procedure wise. Perhaps [the] hearing officer just concentrated on the checked box recommended for an evaluation; however, there's nothing on the medical form that requires evaluation. And any driver should not have been subjected to such." Even though appellant did not pass the driving test, "there shouldn't have been a driving test involved on this matter." Thus, the second hearing officer "terminate[d] that action and return[ed] [appellant's] driving privilege back to him."

Appellant filed a petition for writ of mandate with the superior court on September 17, 2024. The petition asked the court to direct the Department "to release the name of [the] person . . . who filed a fraudulent [r]equest for [d]river [r]eexamination (DS 699) complaint against [appellant] and for the [c]ourt per the [c]omplaint [to] hold this person . . . criminally responsible for providing false information to the [Department]."

The Department filed an opposition to the petition and included a declaration of a Department employee employed as a driver safety manager. The employee explained the request for driver reexamination form asks the reporter to identify relevant medical or mental health information about the driver and attach any relevant records; the form also requires the reporter to sign the form. An employee then contacts the reporter and will "ask the [r]eporter questions about the basis for the request." The form states the reporter may request their name not be revealed and the Department will keep this confidential "to

4

the fullest extent possible." The employee explained this was to "promote the safety of our roads. . . . Absent such confidentiality, drivers about whom such reports are made may take punitive actions against the reporters of this information. This would deter reports, and could threaten the safety of reporters."

The trial court issued a tentative ruling denying the writ petition and setting a hearing for November 15, 2024. The court found: "The *only* issue before this [c]ourt is whether the [Department] is legally required to provide [appellant] with the reporting party's identity as [appellant] seeks." The court noted the Department relied on Vehicle Code section 1808.5 to keep this information confidential, but acknowledged "this confidentiality is not absolute, and may be subject to the public interest balancing test." The trial court concluded, "[T]he public interest in maintaining the confidentiality of individuals submitting [r]equest for [r]eexamination forms outweighs the public interest in disclosure."

The parties appeared for a hearing on the tentative ruling on November 15, 2024. The trial court affirmed its tentative ruling on November 18, 2024, and entered judgment December 9, 2024.

Defendant filed his notice of appeal on November 15, 2024, and attached the tentative ruling.

### DISCUSSION

Appellant asserts, "This appeal arises from a fundamental violation of procedural due process." Appellant's central demand is for the Department to disclose the reporter's identity, asserting refusal to do so violates due process. Appellant explains, "[The Department's] decision to proceed with a reexamination based solely on an anonymous complaint, without any corroborating evidence, violates procedural fairness and due process requirements." In addition to asserting appellant received due process, the Department contends we should decline review because appellant prematurely appealed

5

the tentative ruling and also find forfeiture because appellant raises his due process argument for the first time on appeal.

We exercise our discretion to hear the premature appeal under California Rules of Court, rule 8.104(d)(2), and exercise our discretion to address the purely legal issue this appeal presents. (*Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 196.) There also would be no useful purpose in declining to address a due process analysis that is comparable to the balancing test the trial court performed. (*People v. Yeoman* (2003) 31 Cal.4th 93, 117 ["no useful purpose is served by declining to consider on appeal a claim that merely restates, under alternative legal principles, a claim otherwise identical to one that was properly preserved"].) But we ultimately determine appellant's due process rights were not violated here.

" 'To obtain a writ of mandate under Code of Civil Procedure section 1085, the petitioner has the burden of proving a clear, present, and usually ministerial duty on the part of the respondent, and a clear, present, and beneficial right in the petitioner for the performance of that duty.' " (*Skulason v. California Bureau of Real Estate* (2017) 14 Cal.App.5th 562, 567.) "The existence of a duty allegedly arising from the constitutional guarantee of due process is a question of law decided de novo on appeal." (*Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 278.)

States may not "deprive any person of life, liberty, or property, without due process of law." (U.S. Const., 14th Amend.; see Cal. Const., art. I, § 7, subd. (a); *Board of Regents v. Roth* (1972) 408 U.S. 564, 569.) "The procedural component of the due process clause ensures a fair adjudicatory process before a person is deprived of life, liberty, or property. [Citations.] Not every denial of a fair hearing for which a remedy may be available under state law implicates constitutional due process." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 852.)

We first conclude the right at issue, a driver's license, is entitled to due process. Courts have routinely found citizens have a property interest in driver's licenses such that

6

" ' "[a] driver's license cannot be suspended without due process of law." ' " (*California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 529.) "This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' " (*Bell v. Burson* (1971) 402 U.S. 535, 539.)

What process is due is a more complex inquiry. " ' "Due process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts.' " (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 286.) "[T]he extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context. In some instances this balancing may counsel formal hearing procedures that include the rights of confrontation and cross-examination, as well as a limited right to an attorney. [Citations.] In others, due process may require only that the administrative agency comply with the statutory limitations on its authority." (*People v. Ramirez* (1979) 25 Cal.3d 260, 269; see *Bell v. Burson*, *supra*, 402 U.S. at p. 540 ["A procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case"].)

Courts generally balance three specific factors in identifying the dictates of due process: (1) "[T]he private interest affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge* (1976) 424 U.S. 319, 334-335; see *People v. Ramirez*, *supra*, 25 Cal.3d at pp. 265, 269 [our Supreme Court applying a similar balancing test under the California Constitution].)

Previous cases have addressed the public and private interests involved with suspending drivers' licenses, the first and third factors. These cases have found a state

has a "paramount interest . . . in preserving the safety of its public highways." (*Mackey v. Montrym* (1979) 443 U.S. 1, 17; see *Peretto v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 460 [states have a "paramount interest in public safety"].) And though "[t]he privilege to drive a motor vehicle on the public highways is important," it is "not fundamental." (*Nick v. Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1416.)

The only evidence in the record here of the private and public interests at play is consistent with these cases' prior findings. The Department's employee's declaration filed in support of the opposition to the petition for writ of mandate stated confidentiality for reporters promotes "safety of our roads" by protecting reporters from punitive action from drivers that could deter future reports of unsafe drivers.

The main issue here is the second factor—the risk of erroneous deprivation based on procedures employed. Appellant challenges the Department's nondisclosure of the third-party reporter's identity as violating his due process rights. In examining the second factor, courts have looked at relevant statutes, regulations, internal documents, and any other material that guide the procedures to deprive a property interest. (See *Ziehlke v. Valverde* (2011) 191 Cal.App.4th 1525, 1533-1534 [analyzing how hearing officers are selected by the Department]; *Nick v. Department of Motor Vehicles*, *supra*, 12 Cal.App.4th at pp. 1412-1413 [outlining subpoena process for suspension hearings at the Department]; *California DUI Lawyers Assn. v. Department of Motor Vehicles*, *supra*, 77 Cal.App.5th at p. 525 [providing statutory basis for the Department's administrative per se license suspension system following an arrest for driving under the influence].) The parties do not cite to any statutes or regulations on the use of reexamination reports, and the only material in the record, besides the process the Department employed for appellant's case, is the declaration. But even the Department's employee's declaration is unhelpful here as it discusses only the mechanics of the driver reexamination form, not if

8

and to what extent the Department relies on them in deciding whether to suspend a license.

A few statutory provisions permit the Department to conduct investigations and reexaminations, as well as suspend licenses. But none of these provisions discuss procedures for collecting, verifying, or relying on third-party reports during reexaminations. (See Veh. Code, §§ 13800 [detailing certain circumstances permitting the Department to investigate a license], 13801 [giving the Department authority to "require the re-examination of the licensee"], 13953 [permitting the Department to suspend a license "without [a] hearing" if an investigation or reexamination "require[s] such action"].) Prior courts have also found these procedures do not violate due process. (See *Hough v. McCarthy* (1960) 54 Cal.2d 273, 285 ["Suspension or revocation of a driver's license without a prior hearing does not violate due process where the action is justified by a compelling public interest"].)

We therefore must rely exclusively on the Department's handling of appellant's specific case to examine the potential risk of erroneous deprivation. Here, a reporter initiated the process by filing a driver reexamination form, the Department then sent a letter demanding appellant submit a medical evaluation form and giving him notice he may need to take driving tests and attend a reexamination hearing. After questioning appellant at the hearing, the first officer required appellant to take a driving and written test. The Department then suspended appellant's license after he failed the driving test, explaining appellant "did not demonstrate the ability to drive safely." The Department held a second hearing a day after the suspension became effective, at which hearing the second officer reinstated appellant's license.

This process, including use of a nondisclosed reporter, indicates a low risk of erroneous deprivation of appellant's property interest. First, there is no per se due process violation for not disclosing the reporter's identity, as appellant effectively argues. No prior case has addressed this exact issue, but we can look to well-established criminal

9

law for guidance.  Under Evidence Code section 1041, subdivision (a)(2), the government may withhold the identity of a criminal informant if it establishes disclosure "is against . . . public interest because the necessity for preserving the confidentiality of [the informer's] identity outweighs the necessity for disclosure in the interest of justice." Disclosure of an informant's identity is, however, required "if the informant is shown to be a material witness.  [Citation.]  'An informant is a material witness if there appears, from the evidence presented, a reasonable possibility that he or she [or they] could give evidence on the issue of guilt that might exonerate the defendant.' " (*People v. Bradley* (2017) 7 Cal.App.5th 607, 620.)  Thus, for "an informant who simply points the finger of suspicion at a person who has violated the law[,] due process does *not* require the state to disclose the identity of such an individual." (*Goodstein v. Cedars-Sinai Medical Center* (1998) 66 Cal.App.4th 1257, 1267, fn. 5.)

This law sets at least a floor for our purposes because procedural due process required for suspension of a license is less stringent than criminal law procedures given the comparative importance of the rights at issue.  (Cf. *Ziehlke v. Valverde*, *supra*, 191 Cal.App.4th at p. 1533 [balancing the relevant factors "favors relaxed standards for administrative proceedings to decide whether facts exist to suspend the driver's license of a person arrested for driving with a prohibited blood-alcohol content"].)  We must therefore conclude there is no per se due process violation when the Department does not disclose the identity of a third-party reporter because it is not a per se due process violation to withhold a criminal informant's identity.

We also conclude based on this law the use of the reexamination form here did not create a meaningful risk of erroneous deprivation because the reporter was not a material witness.  There is no indication in the record the Department relied on the confidential reporter's form to suspend appellant's license, let alone meeting the criminal law definition of a material witness.  (*People v. Bradley*, *supra*, 7 Cal.App.5th at p. 620.)  The first hearing officer's written report established the driving test was ordered because of

10

appellant's physician checking the box to have defendant retake the test. This hearing officer then suspended appellant's license based on appellant's failed driving test. Though the hearing officer marked the reporter's form as a hearing exhibit, there is no evidence the form was ever used beyond initiating the proceedings. And the second hearing officer indicated drivers are typically not required to take driving tests unless there is a medical reason given by the physician; this officer made no mention of the reporter's form. The possibility of erroneous deprivation may be substantial if the Department relies heavily on a reporter's form in suspending a license, while disallowing the driver to confront that reporter. (See *Ayach v. Regents of University of California* (2024) 102 Cal.App.5th 331, 341-342 [analyzing administrative proceedings requiring the right to confront witnesses].) But that is not the situation presented here.

Appellant's narrow focus on the reporter's form also ignores the entirety of procedures employed. Appellant received notice and a hearing prior to the Department suspending his license, the two foundational requirements for due process. (*Zuniga v. Workers' Comp. Appeals Bd.* (2018) 19 Cal.App.5th 981, 993 [" ' "The core of due process is the right to notice and a meaningful opportunity to be heard" ' "].) Appellant also received a prompt second review hearing, which resulted in his license being reinstated after not more than one day of suspension. Appellant contends the Department's "flip-flop" is proof of a due process violation. Not so. Even assuming the first officer's decision was erroneous, "the due process clause does not require that all decisionmaking preclude any possibility of error." (*Burkhart v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 109.) And the near immediate reinstatement of appellant's license significantly minimized the effect of any initial erroneous decision. (See *Peretto v. Department of Motor Vehicles*, *supra*, 235 Cal.App.3d at p. 461 ["when a driver is entitled to an immediate hearing, the presence or absence of a hardship provision is simply not significant in a due process analysis"].)

11

In sum, balancing all three factors we conclude there was no due process violation. The brief deprivation of appellant's driving privilege is sufficiently counterbalanced by the Department's interest in maintaining safe roads and the robust procedures the Department employed throughout the reexamination to limit risk of erroneous deprivation, even without the disclosure of the reporter's identity.

Though appellant does not cite to the California Constitution specifically, we also conclude there would not be a violation of California's constitutional due process. California courts apply a fourth due process balancing factor when analyzing due process under the California Constitution: "[T]he dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official." (*People v. Ramirez*, *supra*, 25 Cal.3d at p. 269.) "This dignitary interest encompasses the appearance of fairness to those involved. [Citation.] The California Constitution ultimately provides more due process protection than the federal Constitution alone." (*People v. Sanchez* (2017) 18 Cal.App.5th 727, 756.)

We can discern no basis to conclude appellant's reexamination process could have appeared unfair given the lack of materiality of the reporter's initial report, multiple hearings, and the brief suspension of appellant's license. Appellant complains about having to take a medical exam and driving tests, but these were no more intrusive than necessary to confirm appellant did not have a medical issue and was able to drive safely, protecting the important government interest in safe roads. Appellant also had notice in the initial letter he may have to take driving tests. Further, the second hearing officer said appellant should not have even been made to take those tests due to the lack of identified medical issue, so it appears this was a procedural anomaly. These tests may have been inconveniences to appellant, but we conclude they do not amount to a due process violation when considering the totality of factors under the California Constitution.

12

Appellant finally makes policy arguments against the use of anonymous driver reexamination forms. Under a heading titled "Need for Legislative Reform," appellant asserts: "California must reform its administrative processes by requiring transparency, providing due process safeguards, and criminalizing fraudulent reporting." (Boldface omitted.) We agree these arguments are suited for the legislative branch; courts cannot make policy decisions such as the ones appellant presents here. (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 177 [the Legislature makes law by "weighing competing interests and determining social policy," whereas the judiciary "interpret[s] and appl[ies] existing laws"].)

Having concluded there was no due process violation, we consequently affirm the trial court's order denying appellant's petition for writ of mandate.[2]

---

[2] Appellant also asserts the trial court erred in awarding attorney fees to the Department. Appellant does not provide a citation to the record where the trial court ordered fees, the Department does not address this claim in its brief, and we cannot find any indication in the record fees were so ordered. We consequently do not address this issue. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].)

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

/s/_____
ROBIE, J.

We concur:

/s/_____
EARL, P. J.

/s/_____
HULL, J.

14